JUSTICE TRIEWEILER
dissenting.
¶44 I dissent from the majority’s conclusions that the District Court did not err when it valued Ronald Foreman’s interest in a Nebraska farm, and when it included that interest in the marital estate.
¶45 In our recent decision in In re Marriage of Engen, 1998 MT 153, 289 Mont. 299, 961 P.2d 738, we attempted to clarify years of inconsistent and result-oriented decisional law which pertained to the distribution of gifted, inherited, or preacquired property. However, with the ink barely dry on the Engen opinion, this decision now returns family law practitioners to a total state of uncertainty in this area of the law with another completely result-oriented approach to the issue.
¶46 In Engen, during our discussion of § 40-4-202, MCA, regarding the division of the marital estate, we noted that:
We have previously construed this provision to mean that regardless of who holds title, preacquired or gifted property need not be *197 included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation. In that event, we have held that the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts.
Engen, ¶ 29.
¶47 In Engen, we reversed a judgment of the district court which included a condominium jointly titled to both spouses in the marital estate and then divided it equally because the evidence was that it had been purchased with the husband’s gifted property and there was no evidence that its appreciated value was due to any contribution by the wife.
¶48 In this case, there was no evidence that Kathy contributed in any way to the preservation or appreciation of Ronald’s remainder interest in his family’s land in Nebraska. Nor was there any evidence that the value of the land had, in fact, appreciated or been preserved during the marriage.
¶49 In fact, all evidence was to the contrary. During the parties’ nineteen years of marriage, there was no time when they lived on the property. They made no improvements to the property, nor did they make any financial contributions to the property’s improvement or maintenance. During the sixteen years of the parties’ marriage that Ronald had an actual interest in the property, they spent a combined total of one week on the property.
¶50 Therefore, based on our decision in Engen, and the numerous prior decisions cited in Engen, there was no basis for including Ronald’s interest in the Nebraska farm in the marital estate. The majority’s rationale for doing so is creative and may contribute to what it considers an equitable result; however, it is unsupported by any prior case law and, in fact, defeats the purposes for distinguishing between preacquired, gifted, or devised property when distributing marital assets.
¶51 The majority concludes that Kathy’s efforts as a homemaker, and dissipation of the parties’ earnings in reliance on Ronald’s inheritance, somehow “facilitated the maintenance” of that property entitling Kathy to an equitable share of the “preserved value.” However, the majority does not bother to explain how the value of the farm land was preserved. The inference is that the property might have otherwise been disposed of to support the same lifestyle which the District Court and the majority now characterize as extravagant. However, *198 Ronald had no possessory interest in the property. The value and the condition of the property today is exactly what it would have been regardless of Kathy’s services as a homemaker, and regardless of the parties’ dissipation of their earnings. There is simply no rational connection between the parties’ lifestyle or Kathy’s efforts, and the current value of the Nebraska farm land.
¶52 The majority also suggests that the value of the farm was preserved because “the couple presumably would have had to borrow against the value of Ronald’s vested remainder interest in the farm in order to sustain their lifestyle.” The majority’s suggestion is based on the false assumption, with no basis in the record, that a lending institution would loan money against a future one-third interest in property without the cooperation of the owners of the other two-thirds interest. In spite of the fact that the assumption is unsupported in the record, and contrary to common sense and experience, the majority suggests that there is a solid basis in the record simply because Ronald failed to provide evidence, other than his own testimony, that he was unable to secure the assistance of his siblings in applying for such a mortgage. How much evidence is necessary? Who has more direct knowledge of his relationship with his siblings or their attitude about their interest in the property than Ronald? The fact is, Ronald’s testimony not only makes sense, but it was uncontradicted.
¶53 The majority offers Am. Jur. 2d citations for the principle that a future interest in property is transferable as evidence that a lending institution will loan money based on a speculative future interest which is shared with others who have no interest in mortgaging it. This kind of purely academic approach in total disregard of reality is a disservice to those members of the bar who have to use these rules to resolve practical disputes.
¶54 We now have one rule regarding the inherited property of those who have managed their income responsibly, and another for those who this Court considers “extravagant.”
¶55 I also disagree with the majority’s conclusion that the District Court made adequate findings to award any interest in the farm land to Kathy in lieu of maintenance. Section 40-4-203(2)(f), MCA, requires that before maintenance is ordered the district court must consider “the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.”
*199 ¶56 In this case, the court ordered Ronald to pay Kathy $45,000, based not on any appreciated value in the Nebraska farm land, but based on the court’s determination of the full value of his interest. However, there is no evidence that he has $45,000 to give to Kathy. The majority’s solution is to casually suggest that he can mortgage his interest in the Nebraska farm, or pay her $545.98 a month. As noted previously, there is absolutely no basis in the record, nor common experience, for concluding that someone could obtain a mortgage for $45,000 on a future interest in property which is subject to divestment if the interest holder does not survive the person who currently has a life estate in the property. Neither was there any basis in the record for concluding that Ronald had $545.98 a month with which to pay the $45,000 over the next ten years.
¶57 Finally, I disagree with the majority’s conclusion that the District Court correctly valued Ronald’s interest in the Nebraska farm. ¶58 Kathy’s expert arrived at a value for Ronald’s future interest in the amount of $149,874. However, his appraisal did not take into consideration the fact that five of the 300 acres had been transferred to Ronald’s mother, and that the five acres included the family residence, outbuildings, and a well which, in Ronald’s opinion, equaled 25% of the total value of the property.
¶59 The District Court concluded, and the majority agreed, that there was no documentation that the property had, in fact, been transferred to Ronald’s mother. However, no documentation was necessary. Both parties agreed that the property had been transferred. In fact, Kathy gave the following testimony at trial:
Q. Do you recall your husband and sister [sic] transferring to their mother the farmstead during your marriage?
A. Yes, I do.
Q. Okay. That was something that Ron and his sisters inherited, correct?
A.-
Q. And then they deeded it back to their mother?
A. I believe that’s true.
Q. Okay. The number that you gave to Mr. Rogge, and the number that he has used to evaluate the Nebraska property, is the gross value of all the property received at the time of the inheritance, true?
A. True.
*200 Q. So the number that you gave to Mr. Rogge does not take into account the value of the transfer of the farmstead back to Mrs. Foreman, Ron’s mother, correct?
A. It may not, house and the acres and some things like that, it may not.
Q. So Mr. Rogge’s evaluation is incorrect?
A. It does not take that into consideration.
Q. And if that portion of the property has substantial value, then Mr. Rogge is substantially incorrect, true?
A. True. If that’s the way you want to put it, yes.
¶60 In light of these stipulated facts, the District Court and the majority have raised the bar for proof of a simple fact to a new and unnecessary level.
¶61 The majority affirms the District Court’s finding that no credible evidence was offered to support Ronald’s testimony regarding the value of that part of the property which was transferred back to his mother. However, Ronald’s testimony was uncontroverted. Kathy retained an expert appraiser who should have been in a position to dispute Ronald’s testimony if there was any basis for doing so. However, he did not. Therefore, the District Court abused its discretion when it disregarded both the uncontradicted testimony that the property had been transferred, and the uncontradicted testimony regarding the transferred property’s value.
¶62 In its haste to affirm the District Court’s valuation of Ronald’s interest in the Nebraska farm, the majority simply adopts the District Court’s reasoning without any evidentiary basis for doing so. I disagree.
¶63 The majority’s disposition of this case is based on the fiction that a nonpossessory future interest in real estate which is subject to divestment can somehow be maintained or preserved by the homemaking efforts of the nonacquiring spouse. The majority’s conclusion to that effect makes no sense, returns treatment of preacquired, gifted, or inherited property to the case-by-case result-oriented approach that we tried to depart from in Engen less than a year ago, and makes the job of advising clients in dissolution cases where that kind of property is at issue impossible. The majority opinion will certainly give rise to many creative arguments by nonacquiring spouses when it comes to claims against preacquired, gifted, or inherited property. However, it does nothing to give guidance to practitioners, district *201 courts, or parties so that they can divide property without the necessity of litigation in every case.
¶64 What this case also means is that no parent can give or devise property to a son or daughter, secure in the knowledge that that property will be used to provide for their offspring’s well-being without becoming the subject of claims by their offspring’s spouse in the event of an unsuccessful marriage. The right to provide for the members of a person’s family is an important right which our statutory and case law have previously recognized. That right is greatly diminished, if it exists at all anymore, by the majority’s opinion in this case.
¶65 For these reasons, I dissent from the majority opinion. I would reverse the District Court’s inclusion of Ronald’s future interest in the Nebraska farm land in the marital estate and remand this case to the District Court for division of the parties’ property without regard to the Nebraska farm land, and for reconsideration of Kathy’s right to maintenance based on all those factors which must be considered by statute.